Hanny ROBINSON, Plaintiff,

v.

MANAGED ACCOUNTS RECEIVABLE CORPORATION; Law Offices of Corey Fitzgerald; Dennis Bell; Mark Bishop; Deana Righettini, Defendants.

Case No. CV 09–01996 DDP (JCx).

United States District Court, C.D. California.

Aug. 4, 2009.

Robert Stempler, Cal. Bar No. 160299, Consumer Law Office of Robert Stempler, APLC, Palm Springs, CA, for Plaintiff.

Robert J. Hatem, Attorney at Law, Jason T. Yu, Attorney at Law, Klinedinst PC, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE

[Motions filed on June 4, 2009.]

DEAN D. PREGERSON, District Judge.

This matter comes before the Court on Defendants' Motions to Dismiss and to Strike. After considering the materials submitted by the parties, the Court grants in part and denies in part the motion to dismiss and denies the motion to strike.

## I. BACKGROUND

Plaintiff Hanny Robinson files this action against Defendants Managed Accounts Receivable Corporation ("MarCorp"), Law Offices of Corey Fitzgerald ("LOCF"), and individuals Dennis Bell, Mr. Bishop, and Deana Righettini. Bell was an employee of MarCorp, and Bishop and Righettini were employees of LOCF. (Compl. at ¶¶ 5–8.) Plaintiff alleges that Defendants are debt collectors who attempted to collect Plaintiff's debt. (*Id.* at ¶ 9.) In December 2008, Bell called Plaintiff to try to collect on Plaintiff's debt. (*Id.* at ¶ 10.) During this conversation, Plaintiff informed Bell that she was on active duty with the Marines, and that therefore the Servicemembers' Civil Relief Act applied to her. (*Id.*) Plaintiff asked Bell to send to her home address a written validation of her account with MarCorp. (*Id.* at ¶ 11.) Bell represented that this validation would be sent to her. (*Id.*) In reliance on this representation, Plaintiff agreed to settle her debt for $1,940. (*Id.* at ¶ 12.) Plaintiff told Bell her checking account number at Navy Federal Credit Union and gave MarCorp permission to

withdraw $750 from her account, beginning with a $250 withdrawal on January 15, 2009. (*Id.*) Without further notice to Plaintiff, Defendant MarCorp prepared a paper bank draft, entitled "Statement of Debit" and dated January 5, 2009, to withdraw $500 from Plaintiff's account. (*Id.* at ¶ 14.) Several days before January 15, 2009, Plaintiff called MarCorp to try to renegotiate the agreed-upon payment, saying she could not afford the payments discussed. (*Id.* at ¶ 15.) Bell told her he would get back to her, but did not inform her about the Statement of Debit. (*Id.*) On January 14, 2009, without notifying Plaintiff, MarCorp withdrew $500 from Plaintiff's checking account. (*Id.* at ¶¶ 16–17.) MarCorp had not sent Plaintiff a written validation of her account. (*Id.* at ¶ 17.) Upon learning of this withdrawal, Plaintiff requested her bank to stop payment. (*Id.* at ¶ 18.)

On February 5, 2009, Defendant Bishop called Plaintiff on her cell phone, and left a message in which he told her that the matter was about to go to court. (*Id.* at ¶ 19.) On the same day, Plaintiff called Bishop. (*Id.*) During this conversation, Bishop told Plaintiff that she had written a bad check, that he had no knowledge of Plaintiff's settlement with MarCorp, that that settlement was not in her file, and that Bell no longer worked for MarCorp. (*Id.*) Bishop also offered to settle the debt for $3,000. (*Id.* at ¶ 15.) Plaintiff demanded a written validation of her account, which Bishop told her he could not do. (*Id.* at ¶ 21.)

On March 12, 2009, Defendant Righettini called Plaintiff at work. (*Id.* at ¶ 25.) Plaintiff informed Righettini that she was not authorized to call Plaintiff at work. (*Id.*) In response, Righettini said, "Yes I can. There is nothing that says that I can't." (*Id.*) Righettini told Plaintiff that she owed $3,480 on her account, and of-

fered to settle the account for $3,000. (*Id.* at ¶ 27.) Plaintiff demanded a written validation of her account, which Righettini agreed to send to her. (*Id.* at ¶ 28.) Subsequently, Plaintiff received a letter from LOCF, dated March 12, 2009, which did not include the identity of the original creditor or Plaintiff's account number, and showed an outstanding balance of $3,942.48. (*Id.* at ¶ 29.) The letter offered to settle Plaintiff's debt for $3,000. (*Id.* at ¶ 30.) The letter failed to inform Plaintiff of her rights under the Fair Debt Collection Practices Act ("FDCPA") or to state that the letter was from a debt collector attempting to collect a debt. (*Id.* at ¶ 31.) On March 13, 2009, Plaintiff sent a letter to LOCF, attention of Defendant Righettini, in which Plaintiff requested that LOCF send her written validation of her account, cease communications with her, and stop calling her at work. (*Id.* at ¶ 32.) On March 13, 2009, Righettini called Plaintiff's workplace and spoke with a Sergeant on duty. (*Id.* at ¶ 33.) On March 16, 2009, Righettini, who had by then received Plaintiff's letter dated March 13, 2009, called Plaintiff's workplace again. (*Id.* at ¶ 34–35.) During this phone call, Righettini spoke to a telephone operator, who informed Righettini that she could not call Plaintiff at work, to which Righettini responded that she would continue to call. (*Id.* at ¶ 35.)

Plaintiff filed this suit on March 24, 2009, asserting seven causes of action against the five defendants. Plaintiff asserts violations of the FDCPA and the California Rosenthal FDCPA ("California FDCPA"), intentional interference with prospective economic advantage ("IIPEA"), fraud, intentional infliction of emotional distress ("IIED"), invasion of privacy, and injunctive relief under the California Unfair Competition Law ("California UCL"). On June 4, 2009, Defen-

dants LOCF, Bishop and Righettini ("Defendants") collectively moved to dismiss the entire complaint with prejudice and to strike the portions of the Complaint which assert claims for punitive damages.[1] Plaintiff filed a Reply in support of her complaint on June 15, 2009, and Defendants filed a Reply in support of their motions on June 22, 2009.

## II. MOTION TO DISMISS

### A. PROCEDURAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when the plaintiff's allegations fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal is proper when there is a "lack of a cognizable legal theory or [an] absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a 12(b)(6) motion, "a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000). However, a "court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). Nor is a court "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (U.S.2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127

---

1. Defendants MarCorp and Bell have not re- sponded to the complaint.

S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although a complaint need not include " 'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)) (internal brackets omitted). "[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (internal quotation marks omitted).

## B. DISCUSSION

### 1. First Claim: Violation of the FDCPA, against all Defendants

■ The FDCPA was created to protect consumers from unfair and deceptive debt collection practices. *See* 15 U.S.C. § 1692. In order for a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt collector"; and (3) the defendant must have committed some act or omission in violation of the FDCPA.

*See, e.g., Withers v. Eveland,* 988 F.Supp. 942, 945 (E.D.Va.1997); *see also* 15 U.S.C. § 1692a(3), (6). Plaintiff's complaint explicitly alleges that Plaintiff is a "consumer" and that each Defendant is a "debt collector" under the FDCPA.[2] (Compl. at ¶¶ 38–39.) The complaint further states that "[t]he defendants violated numerous sections of the FDCPA," without specifying which Defendants violated which sections of the statute. (*Id.* at ¶ 42.) Defendants argue that the claim should be dismissed against all Defendants because the factual allegations are insufficient to support the FDCPA claim and because the claim is stated with insufficient specificity. Alternatively, Defendants argue that the claim should be dismissed against Bishop and Righettini because they cannot be held personally liable under the FDCPA.

### a. Sufficiency of the Factual Allegations

■ The factual allegations stated in the complaint are sufficient to state a plausible claim that both Bishop and Righettini, while acting within the scope of their employment with LOCF, violated one or more sections of the FDCPA.[3] Pursuant to 15 U.S.C. § 1692c, without a consumer's consent or a court's permission, "a debt collector may not communicate with a consumer in connection with the collection of any debt ... at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(3). The complaint alleges that Righettini knew that she was not author-

---

**2.** Defendants do not dispute that Plaintiff is a "consumer" under the FDCPA. (*See* Mot. to Dismiss at 4.) Neither do Defendants dispute that LOCF is a "debt collector." (*Id.*) However, as discussed below, Defendants in effect dispute that Bishop and Righettini are "debt collectors."

**3.** The parties do not contest for the purposes of this motion that Defendants Bishop and Righettini were at all relevant times acting within the scope of their employment with LOCF. (*See* Compl. at ¶¶ 5–8; Mot. to Dismiss at 11.)

ized to call Plaintiff at her workplace, and that she did so anyway. (*See* Compl. at ¶¶ 25, 32–35.) Thus, the complaint states sufficient factual allegations to support a claim against Righettini and LOCF under 15 U.S.C. § 1692c.

■ Moreover, the complaint alleges that Defendant Bishop told Plaintiff that she had written a bad check and that she was about to be sued to collect on the debt. (*See* Compl. at ¶ 19.) Bishop also told Plaintiff that he could not send her written validation of her debt, which the Court may infer from the facts of the complaint is untrue. (*See id.* at ¶ 21.) Construing these allegations in the light most favorable to Plaintiff, the complaint states a plausible claim that Bishop violated § 1692d, which prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Thus, the complaint contains sufficient facts to state a plausible claim against all Defendants under the FDCPA.

Moreover, the only case cited by Defendants to support their argument, *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d 1005 (N.D.Cal.2005), is easily distinguishable. (*See* Mot. to Dismiss at 4.) In *Gorman*, the plaintiff alleged that the defendants violated the FDCPA, but the complaint failed to "allege the date or contents of even one call that [the defendants] allegedly made"; instead, it alleged only "that [the plaintiff] received 'harassing, threatening, abusive, oppressive, and annoying telephone calls.'" *Gorman*, 370 F.Supp.2d at 1013 (quoting the complaint). The plaintiff in *Gorman* alleged that defendants violated § 1692c, but "d[id] not allege that [the defendants] had reason to know [that the plaintiff's] employer prohibit[ed] the call." *Id.* In contrast, the instant Plaintiff specifically alleged the date and contents of several phone calls made by Defendants, and alleged specific facts to show that Defendant Righettini knew that Plaintiff's employer prohibited her calls. Therefore, *Gorman* is not inconsistent with the Court's holding in this case.

### b. *Specificity*

■ Defendants argue that Plaintiff's FDCPA claim should be dismissed because the complaint fails to specify which Defendants violated which sections of the FDCPA. (*See* Mot. to Dismiss at 4–5.) However, Defendants' argument misstates Plaintiff's burden under Rule 8. A complaint does not need to specify the particular legal theory on which a claim is based "so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir.2001).[4] Furthermore, the manner in which the factual allegations of Plaintiff's complaint are set out should reasonably notify Defendants which sections of the FDCPA Plaintiff may claim were violated. The FDCPA is not such a lengthy or complex statute as to render Defendants unable "to prepare an adequate defense" without knowing which specific sections of the statute Plaintiff may claim they violated. (*See* Mot. to Dismiss at 5.) Therefore, the Court holds that the complaint states sufficient allegations with sufficient specificity against all Defendants to avoid dismissal of Plaintiff's FDCPA claims.

### c. *Personal Liability of Defendants Bishop and Righettini under FDCPA*

■ Defendants argue that all claims against Defendants Bishop and Righettini as individuals must be dismissed because they cannot be held personally liable for acts committed within the scope of their

---

4. *Twombly* and *Iqbal* do not alter this princi- ple.

employment with LOCF. (*See* Mot. to Dismiss at 11.) The Court reads Defendants to argue, in effect, that Bishop and Righettini cannot be held personally liable under the FDCPA because the employees of a debt collection business do not fall within the FDCPA's definition of "debt collector[s]." *See* 15 U.S.C. § 1692a(6).[5]

The Ninth Circuit has not yet decided the question of whether an individual employee of a debt collection company may be held personally liable as a "debt collector" under the FDCPA for acts committed within the scope of employment. *Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1071 (E.D.Cal.2008). There is a split among persuasive authority. The Sixth Circuit and the majority of district courts that have considered the issue, including all such district courts in the Ninth Circuit, have concluded that employees can be held personally liable under the FDCPA. *Schwarm*, 552 F.Supp.2d at 1070; *see Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435–38 (6th Cir.2008); *see, e.g., Schwarm*, 552 F.Supp.2d at 1070–72 (E.D.Cal.2008) (Shubb, J.); *del Campo v. Kennedy*, 491 F.Supp.2d 891, 904 (N.D.Cal.2006) (Ware, J.); *Newman v. Checkrite Cal.*, 912 F.Supp. 1354, 1372 (E.D.Cal.1995) (Karlton, J.); *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F.Supp.2d 615, 618 (D.Utah 2005); *Piper v. Portnoff Law Assocs.*, 274 F.Supp.2d 681, 689–90 (E.D.Pa.2003); *Teng v. Metro. Retail Recovery*, 851 F.Supp. 61, 67 (E.D.N.Y.1994). On the other hand, the Seventh Circuit has come down the opposite way, holding that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate veil. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059–60 (7th Cir.2000); *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir.2000) (Posner, J.).

■ The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Federal Trade Commission has interpreted the FDCPA's definition of "debt collector" to include "[e]mployees of a debt collection business, including a corporation, partnership, or other entity." 53 Fed. Reg. 50102 (Dec. 13, 1998); *see Schwarm*, 552 F.Supp.2d at 1070 n. 11 (courts "must give substantial deference to an agency's interpretation of its own regulations" (internal quotation marks omitted)). The Court agrees that "it is highly unlikely that Congress wished to restrict liability to the often small corporate vehicle used for collection, and [that] the statutory language clearly brings all those personally involved within the ambit of 'debt collector.'" *Pikes v. Riddle*, 38 F.Supp.2d 639, 640 (N.D.Ill.1998); *see also Schwarm*, 552 F.Supp.2d at 1071 (allowing employees to be held personally liable is "consistent with the FDCPA's broad language.") The Court therefore holds that employees of a debt collection organization may be "debt collector[s]" under the FDCPA, and thus may be held personally liable under the FDCPA for acts committed during the scope of employment.[6]

---

**5.** Defendants frame this argument as an issue of protection through the corporate form. Courts have treated such an argument as encompassed in the "personal liability" issue, and the Court finds such an analysis appropriate.

**6.** In holding that Defendants Bishop and Righettini *may* be debt collectors under the FDCPA, the Court of course does not hold that they *are* debt collectors. This is a question of fact which the Court need not resolve at this stage. It is enough that Plaintiff has alleged that Bishop and Righettini are debt

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's FDCPA claims.

### 2. Violation of the California FDCPA, against all Defendants

The California FDPCA, like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices. *See* Cal. Civ.Code § 1788.1. Plaintiff's complaint alleges that, as defined by the California FDCPA, Defendants are "debt collectors", Plaintiff is a "debtor", and the debt at issue is a "consumer debt." (Compl. at ¶¶ 46–48.) The complaint further alleges that "[D]efendants violated the Rosenthal Act, including Cal. Civ.Code § 1788.17 for applicable FDCPA violations." (*Id.* at ¶ 49.) Defendants move to dismiss Plaintiff's claim under the California FDCPA on similar grounds as those they asserted against Plaintiff's federal FDCPA claim; namely, Defendants argue that the complaint pleads insufficient factual allegations to support the claim and that the claim is stated with insufficient specificity. (*See* Mot. to Dismiss at 5.) Defendants also seem to argue that LOCF is exempt from liability under the California FDCPA. (*See id.*)

#### a. *Sufficiency of the Factual Allegations*

█ The California FDCPA provides, in relevant part, that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [the federal FDCPA, codified at 15 U.S.C.] Sections 1692b to 1692j, inclusive." [7] Cal. Civ.Code § 1788.17. Under the plain language of § 1788.17, any conduct by a debt collector which violates the federal FDCPA necessarily violates the California FDCPA as well. *See, e.g., Hosseinzadeh v. M.R.S. Assocs.,* 387 F.Supp.2d 1104, 1118 (C.D.Cal.2005) (Snyder, J.) ("Because defendant has violated the FDCPA . . ., the Court concludes that defendant has also violated Cal. Civ.Code § 1788.17"); *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 548 (N.D.Cal.2005) (Ware, J.) ("a defendant can be found to violate [the California] FDCPA when he violates [the] FDCPA"); *Sanchez v. Client Servs., Inc.,* 520 F.Supp.2d 1149, 1159 (N.D.Cal.2007). As discussed above, Plaintiffs have pleaded sufficient factual allegations to state a claim against all Defendants under the federal FDCPA. Therefore, under § 1788.17, Plaintiffs have pleaded sufficient factual allegations to state a claim against all Defendants under the California FDCPA as well.[8]

#### b. *Specificity*

For the reasons stated above in the discussion of the specificity of Plaintiff's claims under the federal FDCPA, Plain-

---

collectors in her complaint. (*See* Compl. at ¶ 9.)

**7.** This provision contains a limited exception which does not apply here. *See* § 1788.17 ("subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal.")

**8.** Under the California FDCPA, the term "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ.Code § 1788.2(c). This definition of "debt collector" is broader and "more inclusive" than that of the federal FDCPA. *Pirouzian v. SLM Corp.,* 396 F.Supp.2d 1124, 1131 (S.D.Cal. 2005); *see id.* (the California FDCPA "enlarg[es] the pool of entities that can be sued" and thereby "grants protection beyond what is provided by the FDCPA"). Because employees of a debt collection corporation may be held personally liable as debt collectors under the federal FDCPA without piercing the corporate veil, the Court holds that employees may similarly be held personally liable under the California FDCPA. Therefore, Defendants Bishop and Righettini are not immune from personal liability under the California FDCPA.

tiff's failure to specify which Defendants violated which sections of the California FDCPA does not merit the dismissal of the claim. In fact, Defendants argument to the contrary is even weaker as to this claim because the complaint specifically mentions Cal. Civ.Code § 1788.17. (*See* Compl. at ¶ 49.)

### c. *Whether LOCF is liable under the California FDCPA*

■ Under the California FDCPA, the term "debt collector" "does not include an attorney or counselor at law." Cal. Civ. Code § 1788.2(c). Defendants argue that "LOCF is a law office and therefore a counselor at law" under the California FDCPA. (Mot. to Dismiss at 5.) Several courts have ruled that, while the California FDCPA clearly excludes lawyers, it does not exclude law firms. *See, e.g. Abels,* 227 F.R.D. at 547–48 ("Since the legislature specifically excluded attorneys from the statute but was silent on law firms, this Court presumes that the legislature did not intend to exclude law firms"); *Owens v. Brachfeld,* 2008 U.S. Dist. LEXIS 63701 *8, 2008 WL 3891958 *3 (N.D.Cal.2008) (Fogel, J.); *Navarro v. Eskanos & Adler,* 2007 U.S. Dist. LEXIS 15046 *12, 2007 WL 549904 *5 (N.D.Cal.2007) (Alsup, J.). The Court has found no authority to the contrary. The Court finds persuasive the authority holding that a law firm may be a "debt collector" under the California FDCPA. Thus, the Court will not dismiss Plaintiff's California FDCPA claim against LOCF.

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's California FDCPA claims.

### 3. Fourth Claim: IIPEA, against all Defendants[9]

■ In California, the tort of IIPEA requires the following elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (internal quotation marks omitted). Plaintiff alleges in her complaint that all Defendants are liable for IIPEA because "the defendants called Plaintiff's workplace with the intention of causing Plaintiff to fear being reprimanded by her employer … so as to convince Plaintiff to pay [her debt]." (*See* Compl. at ¶ 62.) Plaintiff also alleges that Defendants "hoped the[ir] calls would get Plaintiff reprimanded" by her employer. (*See id.*)

Defendants argue that the claim should be dismissed because it fails to clearly plead each element of the cause of action, and because the claim is insufficiently clear as to which Defendants committed which acts. (*See* Mot. to Dismiss at 6.) For the reasons discussed above, the Court will not dismiss Plaintiff's claim on those grounds so long as the complaint states sufficient facts that show that she is entitled to relief on her claim. *See Fontana,* 262 F.3d at 877.

■ The complaint is devoid of any factual allegations which state, or from which the Court can reasonably infer, that there was any disruption of Plaintiff's economic relationship with her employer, or that Plaintiff suffered any economic harm as a result of Defendants' phone calls to Plaintiff's workplace. The complaint does not allege that Plaintiff was ever reprimanded by her employer because of De-

---

9. The Court need not address Plaintiff's third claim, for fraud, because it is only asserted against MarCorp and Bell, who have not moved to dismissed the claim.

fendants' actions. In her Reply, Plaintiff asks the Court to "infer that harassing a member of the U.S. Marines on Base and calling her co-workers and others may impair her ability to remain a Marine and receive the same promotions." (Pl.'s Reply at 22.) Plaintiff also explains that Defendants' conduct could "result in a charge of 'conduct unbecoming an officer' for which [Plaintiff] could be dishonorably discharged or imprisoned." (*Id.*) To make such inferences based on the facts contained in the complaint would be to engage in pure speculation. The factual allegations of the complaint do not show "more than the mere possibility" that Defendants are liable for IIPEA. *See Iqbal,* 129 S.Ct. at 1950.

Accordingly, Plaintiff's IIPEA claim is dismissed, without prejudice, against all Defendants.

### 4. Fifth Claim: IIED, against all Defendants

■■■ In California, the tort of IIED requires the following elements: (1) "outrageous conduct by defendant"; (2) "an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress"; (3) plaintiff's suffering of "severe emotional distress"; and (4) "an actual and proximate causal link between [the defendant's] . . . conduct and the [plaintiff's] emotional distress." *Christensen v. Superior Court,* 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991). Plaintiff alleges that "[t]he actions of the defendants were outrageous, intentional, and malicious, and done with reckless disregard of the fact that it would certainly cause, and did cause, [Plaintiff] to suffer severe emotional distress." (Compl. at ¶ 65.) Defendants argue that the claims should be dismissed because Plaintiff does not properly plead the elements of the claim, Plaintiff's allegations cannot constitute "outrageous" conduct as a matter of law, and the complaint does not sufficiently

allege that Plaintiff suffered severe emotional distress.

■■■ The Court is not persuaded by Defendants' first and second arguments. First, the complaint explicitly—even formulaically—recites each of the four elements of an IIED claim (all in one sentence, no less). (*See* Compl. at ¶ 64–65.) Second, the question of whether Defendants' alleged conduct is "outrageous" should be decided on a fuller record. *See, e.g. Tater–Alexander v. Amerjan,* 2009 U.S. Dist. LEXIS 37522 *15–18, 2009 WL 1212977 *6–7 (E.D.Cal.2009) (Wanger, J.); *see also* Restatement (Second) of Torts, § 46, cmt. h.

Defendants' third argument is well-taken on these allegations. The complaint does not allege any facts that show how Plaintiff suffered emotional distress. The complaint contains only the conclusory statement that Plaintiff "suffer[ed] severe emotional distress." (Compl. at ¶ 65.) The complaint does not allege any facts that Plaintiff suffered "embarrassment, humiliation, fear or other forms of emotional distress." (*See* Pl.'s Opp'n at 23.) Because the complaint fails to allege how Plaintiff suffered emotional distress, Plaintiff's IIED claim is dismissed against all Defendants, with leave to amend to include allegations regarding the nature of Plaintiff's distress. *See Bogard v. Employers Casualty Co.,* 164 Cal.App.3d 602, 617, 210 Cal.Rptr. 578 (1985) ("Although appellants alleged they suffered severe emotional distress, they failed to set forth any facts which indicate the nature or extent of any mental suffering incurred as a result of [respondent's] alleged outrageous conduct.").

### 5. Sixth Claim: Invasion of Privacy, against all Defendants

■■■■ California recognizes four categories of the tort of invasion of privacy: (1) intrusion upon seclusion, (2) public disclosure of private facts, (3) false light in

the public eye, and (4) appropriation of name or likeness.[10] *Shulman v. Group W Prods., Inc.,* 18 Cal.4th 200, 214, 214 n. 4, 74 Cal.Rptr.2d 843, 955 P.2d 469 (1998); *Miller v. National Broad. Co.,* 187 Cal. App.3d 1463, 1482, 232 Cal.Rptr. 668 (1986). The elements of an intrusion upon seclusion claim are: " '(1) [t]he defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2)[t]he intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3)[t]he intrusion caused [the] plaintiff to sustain injury, damage, loss or harm.' " *Joseph v. J.J. Mac Intyre Cos.,* 238 F.Supp.2d 1158, 1169 (N.D.Cal.2002) (quoting CA BAJI 7.20). "To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Shulman,* 18 Cal.4th at 232, 74 Cal.Rptr.2d 843, 955 P.2d 469. "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.*

 Plaintiff alleges that she had "a reasonable expectation of privacy with respect to the sanctity of her home, personal relations, and workplace" and that Defendants "seriously invaded Plaintiff's right to privacy in a manner which constitute[s] an egregious breach of social norms." (Compl. at ¶¶ 68, 69.) These statements are conclusory and of themselves do not state a right to relief. Thus, the Court

turns to the factual allegations contained in the complaint. The complaint alleges that Defendant Righettini repeatedly called Plaintiff's workplace even though Righettini knew she was not authorized to do so. (Compl. at ¶¶ 33–35.) Thus, the complaint states a plausible claim that Righettini intentionally invaded Plaintiff's privacy at her workplace.[11]

 However, the complaint alleges no facts which show that Defendant Bishop intruded upon Plaintiff's privacy. The only factual allegations in the complaint relating to Bishop are that Bishop left Plaintiff one message on her phone and that Plaintiff called Bishop and spoke to him one time. (See Compl. at ¶¶ 19–24.) The complaint does not allege, nor can the Court infer, that either the phone call or any of the statements or representations that Bishop allegedly made to Plaintiff intruded upon Plaintiff's seclusion or private affairs. Even when accepting all facts as true and construing them in the light most favorable to Plaintiff, the complaint does not state a claim against Bishop for invasion of privacy.

Therefore, the Court denies Defendants' motion to dismiss Plaintiff's invasion of privacy claims as to Defendants Righettini and LOCF, and grants the motion as to Defendant Bishop, with leave to amend.

### 6. Seventh Claim: Injunctive Relief under the California UCL, against Defendants LOCF and Bishop

 The California UCL authorizes a court to grant an injunction "as may be

---

10. In her complaint, Plaintiff does not specify the theory upon which her invasion of privacy claim is based. (*See* Mot. to Dismiss at 8.) The second, third and fourth categories do not apply to the facts alleged in the complaint. Therefore, the Court analyzes Plaintiff's claim under the intrusion upon seclusion theory. This is consistent with Plaintiff's classification of her claim. (*See* Pl.'s Reply at 24.)

11. The Court cannot decide at this stage whether Plaintiff had an "objectively reasonable expectation of" privacy or whether Righettini's actions were "highly offensive to an ordinarily reasonable person." *See Joseph,* 238 F.Supp.2d at 1169; *Shulman,* 18 Cal.4th at 232, 74 Cal.Rptr.2d 843, 955 P.2d 469. The Court holds only that the facts in the complaint state plausibly that these elements are met.

necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." Cal. Bus. and Prof.Code § 17203. Under the California UCL, "unfair competition" "include[s] any unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof.Code § 17200. Plaintiff alleges that the actions committed by the Defendants in violation of the federal FDCPA and the California FDCPA constitute unfair competition in violation of the California UCL. (Compl. at ¶ 76(a).)

The California UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (internal quotation marks omitted). "By proscribing 'any unlawful' business practice, [the California UCL] borrows violations of other laws and treats them as unlawful practices that [are] independently actionable." *Cel–Tech,* 20 Cal.4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (internal quotation marks and citations omitted). "Virtually any law— federal, state or local—can serve as a predicate for" liability under the California UCL. *State Farm Fire & Cas. Co. v. Superior Court,* 45 Cal.App.4th 1093, 1102– 1103, 53 Cal.Rptr.2d 229 (1996); *see also del Campo v. Am. Corrective Counseling Servs., Inc.,* 254 F.R.D. 585, 595 n. 8 (N.D.Cal.2008) ("[A]n FDCPA violation serves as a predicate for liability under the [California UCL].")." Because Plaintiff has stated claims under the FDCPA and the California FDCPA against all Defendants,

Plaintiff also states a claim under the California UCL against all Defendants. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claims under the California UCL.[12]

## III. MOTION TO STRIKE

Defendants move to strike from the complaint Plaintiff's claim for punitive damages. Plaintiff seeks punitive damages in connection with her claims for IIPEA, IIED, and invasion of privacy. (*See* Compl., "Prayer" at ¶ 3.) Because the Court has dismissed Plaintiff's IIPEA and IIED claims against all Defendants and her invasion of privacy claim against Defendant Bishop, the Court will discuss only Plaintiff's invasion of privacy claim against Defendants Righettini and LOCF.

### A. PROCEDURAL STANDARD

Under Rule 12(f), a "court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f). Matter is "immaterial" if it "has no essential or important relationship to the claim for relief" and is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (internal quotation marks and citations omitted), *rev'd on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). A motion to strike should not be granted unless the court is " 'convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the

---

**12.** Defendants argue that Plaintiff's claims under the California UCL should be dismissed because the complaint does not specify which Defendants committed which actions in violation of the law. (*See* Mot. to Dismiss at 10.) For the reasons stated previously, this argument is without merit. Defendants also argue

that "[i]t would be wholly unreasonable for this Court to grant the same injunctive relief against ... different Defendants who acted completely differently." (Mot. to Dismiss at 10.) This argument does not set forth a reason for the Court to dismiss Plaintiff's claim.

claim ... succeed.'" *In re New Century,* 588 F.Supp.2d 1206, 1220 (C.D.Cal.2008) (Pregerson, J.) (quoting *RDF Media Ltd. v. Fox Broad. Co.,* 372 F.Supp.2d 556, 561 (C.D.Cal.2005)). When considering a motion to strike, the court "'must view the pleading under attack in the light most favorable to the pleader.'" *New Century,* 588 F.Supp.2d at 1220 (quoting *RDF Media,* 372 F.Supp.2d at 561).

## B. DISCUSSION

Under California law, punitive damages are recoverable "[i]n an action for the breach of an obligation not arising from contract, where it is proven ... that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ.Code § 3294(c)(1). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ.Code § 3294(c)(2). Because Plaintiff's invasion of privacy claim is based on state law, the Court must apply California substantive law and federal procedural law in deciding Defendants' motion to strike. *See Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 406–407 (C.D.Cal.2005); *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1480 (C.D.Cal.1996).

As discussed above, Plaintiff alleges in her complaint that she had "a reasonable expectation of privacy with respect to the sanctity of her home, personal relations, and workplace" and that Defendants "seriously invaded Plaintiff's right to privacy in a manner which constitute[s] an egregious breach of social norms." (Compl. at ¶¶ 68, 69.) Plaintiff further alleges that "[D]efendants acted with oppression, fraud, and malice, thereby entitling Plaintiff to puni-

tive damages." In support of her claim against Defendants Righettini and LOCF, Plaintiff alleges that Defendant Righettini knew she was not permitted to call Plaintiff's workplace, and that Righettini continued to call Plaintiff's workplace despite such knowledge. (*See id.* at ¶¶ 25, 32–35.) Furthermore, the complaint alleges that Righettini called Plaintiff's workplace with the intent of causing Plaintiff to fear being reprimanded by her employer, and with the hope that Plaintiff would in fact be reprimanded, in order to pressure Plaintiff into paying her debt. (*See id.* at ¶ 62.)

■ Defendants' assert two main arguments in support of their motion to strike. First, after explaining at length that punitive damages are recoverable under California law only in extraordinary circumstances, Defendants argue that their conduct as alleged in the complaint does not rise to the level of "despicable conduct" as a matter of law, and that therefore punitive damages are unavailable. (*See* Mot. to Strike at 5–9); *see* Cal. Civ.Code § 3294. This argument is without merit. Whether or not Defendant Righettini's actions constitute "despicable conduct" is a question of fact that the Court cannot decide at this stage. *See, e.g. Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1183 (E.D.Cal.2005); *Mahon v. Crown Equip. Corp.,* 2007 U.S. Dist. LEXIS 93903 *10–11, 2007 WL 4557094 *4 (E.D.Cal.2007) (citing California cases). Furthermore, the factual allegations contained in the complaint show that Righettini could be found to have acted "with a willful and conscious disregard of the rights ... of others." *See* Cal. Civ.Code § 3294(c)(1). Therefore, the Court is not "convinced ... that under no set of circumstances could [Plaintiff's] claim [for punitive damages] ... succeed." *New Century,* 588 F.Supp.2d at 1220.

 Second, Defendants argue that the factual allegations in the complaint are not specific enough to support Plaintiff's claim for punitive damages. (*See* Mot. to Strike at 9–10.) Defendants argue that "[w]ith respect to the proper pleading of punitive damages claims, the [c]omplaint must set forth *specific facts* that entitle [the p]laintiff to such damages, and Plaintiff has failed to do so." (*Id.* at 9 (emphasis in original).) However, the fact that California courts may impose a heightened pleading requirement on claims for punitive damages is irrelevant, because such a requirement conflicts with federal procedural law. *See State Farm*, 231 F.R.D. at 406 ("While California law governs Plaintiff's substantive claim for punitive damages ..., the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of pleadings.") (citing *Bureerong*, 922 F.Supp. at 1480). Under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, "conclusory assertions that a defendant acted intentionally, with 'malice,' or with 'conscious disregard' a[re] adequate to plead the mental state required under [§ ] 3294." *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1019 (S.D.Cal.2000); *accord State Farm*, 231 F.R.D. at 406–07; *Bureerong*, 922 F.Supp. at 1480. Moreover, Plaintiff pleads specifically that Defendant Righettini called Plaintiff at work not only with knowledge that she was prohibited from doing so, but also with intent to cause harm to Plaintiff. (*See* Compl. at ¶¶ 25, 32–35.) These factual allegations more than meet the minimal requirement of conclusory assertions.

Accordingly, the Court denies Defendants' motion to strike Plaintiff's claim for punitive damages in connection with her invasion of privacy claim against Defendants Righettini and LOCF.[13]

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss in the manner indicated above, and denies Defendants' motion to strike.

IT IS SO ORDERED.

---

**13.** Under Cal. Civ.Code § 3294(b), "[a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer ... authorized or ratified the wrongful conduct for which the damages are awarded." Defendants did not argue that this provision protects LOCF from vicarious liability for Righettini's actions. Even so, the Court notes that such an argument would be incorrect. Construing the complaint in the light most favorable to Plaintiff, the Court may assume that Defendant Righettini's conduct was authorized by LOCF and that therefore LOCF is not immune from punitive damages for Righettini's actions.